Our first case for argument today is 24-2136, Ravin Crossbows v. Squires. Counsel, how do I say your name? Jelinechek. Ms. Jelinechek, please begin. Good morning. May it please the Court. Katie Jelinechek, a Foley & Lardner, LLP, on behalf of the appellant and patent owner, Ravin Crossbows. This appeal turns on a single dispositive issue, what it means for a string guide to be mounted to a bow limb. Claim 1 of the 015 patent claims a very specific mechanical relationship, one in which the string guide is attached to the limb in a way that constrains its motion so that it moves with the limb. Stanziale 771 does not disclose that structure. Well, one of the problems I have with your proposed construction is the claim already has a limitation rotatable around the first axis. So if I were to import your construction into the understanding of the word mounted, which, by the way, doesn't seem like anyone's plain meaning. You know, the word mounted does not correlate in anyone's mind with rotatable around the first axis. I mean, that's just not plain understanding of the word. But also, it's a separate claim limitation. A first string guide mounted to the first limb and rotatable around the first axis. So why would I import rotatable around the first axis, which is its own claim limitation, somehow into the construction of the word mounted? Constraining mounted to mean that it's fixed around an axis is not importing a rotational element into the claim. It's simply providing structural clarity as to the connection between the limb and the string guide, which is that structural clarity that's disclosed. But that structural clarity comes from its own claim term. That's a claim limitation. That is its own claim limitation. So why would I take something that's its own claim limitation and try to stuff it into the definition of the word mounted? Because the intrinsic evidence tells you that in every embodiment disclosed by the applicant, mounted to contemplated that specific arrangement that included a physical connection to only allow rotation around that fixed axis. What is your best intrinsic evidence that you can claim supports your proposed claim construction? Figures 10 through 12 and the corresponding description. And what is really your response to Chief Judge Moore's other statement about the fact that what you're trying to have us construe mounted to would actually be redundant of other language of the claim? It's not redundant of the other limitations because the other limitations aren't enough to describe that spatial relationship that's contemplated by the mounting to arrangement. Each limitation must carry its own meaning. And the Federal Circuit has routinely held that we can't treat claim language as surpluses. What do you mean by that? Because I guess other language says that the string guide has to be rotatable around the first axis, right? So what additional meaning are you getting from your construction of attitude? Well, the other limitations describe the internal structure of the string guide and its interaction with the string and the cables. It doesn't say anything about how the lens are mounted to the string guide. And mounted to is the only limitation that defines how the string guide is positioned relative to the one. My understanding is you have no dispute with the indirectly connected interpretation of mounted to. Is that right? That's correct. The fact that the construction permits indirect connections generally is not the problem. The problem is that the board's construction permits an infinite number of indirect connections without any structural or functional limitations as to how the limb and the string guide are meant to interact. Well, could the rest of the language in the claim actually provide those sort of boundaries that you contend are somehow missing? The remaining claim limitations don't speak to that connection between the limb and the string guide. Those other claim limitations in Claim 1 relate to the configuration of the helical power cable, how it wraps around the cams, ultimately the width of what that looks like, and how that interacts in both a released and drawn position of a crossbar. I guess I'm having trouble understanding that, but I'm probably missing something. So Claim 1 says, if we inserted your proposed construction of mounted to in there, it would be a first string guide physically connected to allow only rotation about a fixed axis to the first bow limb, and rotatable around the first axis, right? Right, but that rotatable around the first axis is talking about that string guide's relative movement to the limb. But why would you need to say to allow only rotation about a fixed axis if you're also saying rotatable around a fixed axis? The rotation around the fixed axis in the proposed construction of mounted to is identifying the physical relationship of the string guide to the limb. The rotation element in the claim, rotatable around a first axis, talks about how that string guide is going to operate within the scope of the claim. Are you arguing for any sort of disclaimer or disavow in the intrinsic record? No. Raven is proposing a construction of mounted to that aligns exactly with what it disclosed in the embodiments, the three distinct embodiments. Let me follow up on Judge Cunningham's questions. You said no to disavow or disclaimer or anything like that. What about lexicography? Do you think, because if I use the word mounted in normal speech, I don't think only rotational about a fixed axis. That's not the definition that pops into my mind for what is otherwise a pretty normal word. So do you believe that there was lexicography in the patent that clearly defined the word mounted to have this very precise and not plain ordinary meaning?  Where? Show me exactly where that lexicography occurred. Specifically, it would be in the three distinct embodiments that are disclosed in the patent. I'm hoping for a column and line number. Sure, of course. So column five, lines 23 through 26, appendix 61. Column five, lines 64 through 65. So in column five, where is the lexicography that the word mounted requires? This not plain meaning definition. It's describing how the string guide is physically connected to the limb. It's not disclosing. But that doesn't look like lexicography to me. Like it just looks like a description. I think in this circumstance, it's both. The description of the figures is providing these specific application of the very simplistic crossbow design that's contemplated by claim one. And in each of these distinct embodiments, there is only physical connection between the limb and the string guide, whereby the string guide is attached in such a way that it's rotating around that limb's fixed axis. The construction that's proposed by Raven addresses the exact problem that the district court judge in the parallel litigation pointed out with the board's construction, whereby that if mounted to means all connections, direct and indirect connections, every component of a crossbow is mounted to every other component. And that's not a hypothetical problem. That is exactly how petitioner's expert understood that term. And that's at appendix 1063, page 146, lines 13 through 24. So it sounds like what you're saying, and you can help me if I'm right about this, is that your problem is with the indirect aspect. Because if everything is actually connected to everything else somehow, then theoretically everything is mounted to everything else. And that's not an appropriate use of the term mounted. Is that what your argument is? That's exactly right. And that is exactly the error that the Federal Circuit rejected in power integrations, a panel in which your honor was a part of, that rejected an unreasonably broad construction that eliminated the structural relationship that the specific claim language was contemplating. I just want to make sure this is really clear, because I think one of the very first questions Judge Cunningham asked you is, do you dispute that there are indirect connections? And you said, no, indirect connections are fine. But what you're really explaining is, no, there can be attenuated indirect connections that aren't fine, and that's why that claim construction is too broad. Is that how I understand you to be arguing this? That's exactly right. And it's that infinite number of indirect connections or an indirect connection that doesn't provide any structural or functional information that tells a person of ordinary skill in the art any meaningful connection about that physical relationship between the string guide. The thing I struggle with is the connection between this argument and the argument you're making about mounted to, right? Because it seems like you're saying there can't be any infinite, indirect set of connections, but then you're saying the remedy is to adopt this construction of mounted to that seems to create all these problems and not be tethered to what mounted to ordinarily means. So why do we jump from you can't have an infinite number of indirect connections and be mounted to to your proposed construction of mounted to? The infinite number of indirect connections renders the claim term mounted to meaningless, whereby requiring a specific construction of mounted to that is tethered to the specific disclosure in figures 10 through 12 and the corresponding description of those figures provides the necessary clarity for a person of ordinary skill in the art as to how do the limbs physically interact with the string guide. But what if we're not buying your proposed construction? I understand the argument and the clarification you made to my colleagues here, but at the same time, I'm not buying this proposed construction that you're identifying. Is there something else in the intrinsic record that you think actually could pit the appropriate bounds on your concerns with respect to the indirect connection portion? I think any proposed construction of mounted to has to embody the idea that there is a physical connection between the limb and the string guide such that they move in combination when the drawstring is pulled and they're going to move in tandem. And that string guide, as it relates to other claim limitations, also needs to be able to rotate. You're almost out of all your rebuttal time, so would you like to save some?  Okay, Ms. Lateef. Thank you. May it please the Court, Monica Lateef for the U.S.P.T.O. I'd like to touch on opposing counsel's comments about there not being appropriate bounds in the claim construction that the board offered. And what creates the boundaries in this claim construction is the claim language itself. I think it was touched on a little bit at the beginning, but if you look at Claim 1 and you were to insert the board's construction, which is connected to either directly or indirectly to the second bow limb and rotatable around a second axis, there is your constraint. If you had an infinite amount of intervening parts, but then the drawstring could not rotate around a second axis, then those intervening parts would not read on this claim. So it's not as if there's either you can only have two or you can have 52. It's do you have something mounted to that then can still satisfy what this claim says, which is a string guide mounted to the second bow limb and rotated around a second axis. So there's not some number that should be looked for here in this construction. So you think the other claim terms, namely rotatable around a first axis, sufficiently cabins in because what I was worried about is this indirect concept. Because when I think of something mounted to something else, I think of some close relationship. They are attached to each other in some close and meaningful way. But if you can have like 20 components between two things, they don't seem mounted to me in the way an ordinary person would understand the plain meaning of the word mounted. They might ultimately be attached through many intermediaries, but they are not actually mounted. And so for me, I will tell you, I came in here today thinking that word should have just been given as plain meaning and some fact finder should have figured out in an individual circumstance, case by case, what the word mounted means in the context of its use. That's how I came in today thinking this should have been plain ordinary meaning because I don't love this indirect piece. I hate their construction. That's not happening. But I don't like the indirect piece because it felt unlimited to me. So I didn't know what to do with it. So I think that what you're telling me is, no, Judge, it's not unlimited. The rest of the claim terms tell you how narrowly mounted the indirect attachment must be because it still has to do this other stuff. That's correct, Your Honor. That is the point here. That's a good argument. I didn't understand that argument before. And I would just like to point out, and I understand the hesitation with the indirect, but opposing counsel has never disputed that there can be these indirect attachments. Yeah, there's a question of law, Ms. Lateef. I can do whatever I want. Understood, Your Honor. Not bound by her arguments. Understood, Your Honor. I just wanted to clarify that. If we were looking at intrinsic evidence, even the spec has intervening pieces in it. That was the point that I was trying to make. You know, I agree with the indirect concept. I don't have a problem with it. It's just it shouldn't be limitless. And it's not because the claim cabins in what that means. That's what the rest of that claim language is. And it's showing the relationship between the string guides and the bowline. Yes. I mean, I think your adversary focuses a lot on the idea of superfluity. And I wonder if you want to address that. I'm sorry. I didn't hear you. I think your adversary focuses on the idea of superfluity, right? Like the idea that this ward isn't doing any work on your construction. I wonder if you want to address that. And when you say the word, meaning? Oh, well, it's describing the connection between the string guide and the bowline by being connected. I guess I don't really understand the argument that she's making about it not doing any work. But it's describing basically how the string guide works with the bowline. It has to be a physical tethering. It's connected to either directly or indirectly. So that is the work that it is doing. What would you say is the best intrinsic support for your construction of Mounted 2? I would point to the claims. And I would also point to the specification. But for the best support, it would be the claim language first and foremost. Is there a specific part of the specification you would point us to? Yes, Your Honor. Aside from the claims, I mean? Yes, Your Honor. I would point to where opposing counsel pointed, actually. I think the language that was pointed to actually supports the board's construction. So, again, at APPX 61, if you look at Columns 5, just the language kind of mirrors the claim language, to be honest. If you look at Line 23, string guides 158A and B are rotatably mounted, typically eccentrically, on respective limbs. 154A and B on respective axles, 160A, 160B. So there, not only do you have the rotation, cabining, what that Mounted 2 is, but then you also show an intervening piece, which is the axle. And throughout the spec, there's numerous times where that comes up. Again, if you look a little bit further down in the same column on Line 64 to 65, that shows up. If you look at Column 6. Okay, where's the intervening piece in 64, 65? Okay. The axis 318A. And then also, if you look at Columns 6, Lines 5 through 6, and then again, Columns 6, Lines 34 through 36. Throughout the specification, it talks about this needing to have this rotation that happens between the string guide and the limb. But it also has an intervening axle that exists, which again, just to back up, speaks directly to the intervening piece, which no one here seems to be disputing. Okay, so let's go back to that intervening piece. Column 6, which thing is the intervening piece? The second bow limb? No, no, no. That's not the intervening piece, yeah. String guides. The axis 368A. I'm looking at Column 6, Lines 34, 35, 36. There's an axle within these. If you look at the figures, maybe that's easier. Okay, let's look at the figures. So if you look at Figure 10, APPX 56, there is 158A, that's the string guides, and the bows are 150. I'm sorry, the bows are 154, that's the bow limb, A and B. And then also, if you look at 160, A and B, those are the axle that it's rotating around. That's the intervening piece between the string guide and the bow limbs that I'm talking about. Hopefully that was helpful. Okay, so it sounds like what you would sum up as your best intrinsic support and specification is really this Column 5, Lines 23 through 26 that clearly identify the intervening portion and also helps put some bounds on the indirect connections. Yes, Your Honor. Okay. And if there are no further questions, I yield my time. Thank you. Thank you. Raven does not dispute the indirect connection. It really is this idea that system-level connectivity is sufficient to satisfy the Mounted-to limitation under the Board's construction. Opposing counsel pointed to the claim language as being sufficient to constrain the limitless scope to the Board's construction of Mounted-to. But there's not a single other claim limitation, and I didn't hear her say one, that says anything about the structural relationship of the bow limb to the string guide. Mounted-to is the only limitation that defines how the string guide is positioned relative to the limb. Under the Board's construction, Mounted-to collapses into a mere system-level connectivity, which means the limitation does no work at all. Raven's construction preserves the distinct role. Mounted-to defines the relationship between the limb and the string guide. Rotatable defines the permitted motion within that relationship, as detailed in the claim language. Thank both counsel. The case is taken under submission. Thank you.